UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ELLIOT THOMPSON,   Case No. 1:10-cv-708

    Plaintiff,

        Judge Timothy S. Black

vs.

CITY OF CINCINNATI, *et al.*,

    Defendants.

**ORDER THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 26) IS DENIED**

This civil action is before the Court on Defendants' motion for summary judgment (Doc. 26) and Plaintiff's memorandum in opposition (Doc. 39).

## I. BACKGROUND FACTS

Plaintiff Elliot Thompson filed this civil action against Defendants City of Cincinnati and Patrick Caton,[1] alleging claims for: (1) unlawful search and seizure (Count I); (2) abuse of process (Count III); (3) malicious prosecution (Count IV); and (4) failure to train, supervise, monitor, and discipline employees (Count V).  Defendants move for summary judgment on Count V.[2]

---

[1] Plaintiff voluntarily dismissed all claims against Defendant Officer Anthony Murphy, as well as his civil rights conspiracy claim (Count II) against Sgt. Caton and the City.  (Doc. 32).  Accordingly, those claims are not addressed herein.

[2] Defendants concede that "there is a genuine issue of material fact with respect to the initial stop made by Sergeant Patrick Caton.  Sergeant Caton observed Mr. Thompson make an improper lane change and operate his motor vehicle without a safety restraint.  Mr. Thompson claims that he was stopped with the engine off for about ten minutes, praying, before Sergeant Caton pulled up and started questioning him.  In light of this dispute of fact, Sergeant Caton is unable to move for summary judgment as to 'Count One: Unlawful Search and Seizure,' 'Count Three: Abuse of Process,' or 'Count Four: Malicious Prosecution.'"  (Doc. 26, fn 1).

## II.  UNDISPUTED FACTS[3]

1. On July 27, 2009, Mr. Thompson was driving on McMicken Avenue in Over-the-Rhine with at least one passenger. (Doc. 1 at ¶ 11).

2. The female passenger was a prostitute named Alice Wood. (Doc. 25 at 29-30; Doc. 24 at 85-86).

3. Mr. Thompson then pulled over to the curb to speak to a woman to whom he had been providing spiritual support and guidance. (Doc. 1 at ¶ 11).

4. Sgt. Patrick Caton then stopped his car alongside Mr. Thompson's and proceeded to question Mr. Thompson.[4] (*Id*. at ¶ 12).

5. Mr. Thompson explained that the cookie was exactly what it appeared to be and not a controlled substance, but Sgt. Caton nevertheless placed him in handcuffs. (*Id*. at ¶ 13).

6. Sgt. Caton then conducted a search of Mr. Thompson's automobile, which did not reveal any controlled substances or any suspicious materials. (*Id*. at ¶ 14).

7. The sugar cookie was ultimately determined not to be drugs, but instead to be an actual, edible baked good. (*Id*.)

8. Mr. Thompson was detained and not free to leave for approximately thirty minutes while Officer Murphy field tested the substance in the baggie while Sgt. Caton conducted a cursory search of Mr. Thompson's vehicle. (Doc. 23 at 87; Doc. 24 at 106; Doc. 25 at 36-40).

9. After Sgt. Caton detained Mr. Thompson and searched his vehicle, and after he discovered no contraband or evidence of criminal activity in the car, Sgt. Caton nevertheless decided to charge Mr. Thompson with failure to signal

---

[3] *See* Doc. 26 at 14-16 and Doc. 36.

[4] Plaintiff contests that Sgt. Caton saw what appeared to him to be crack cocaine in a baggie located on the inside slot of a front door, that the baggie was in plain view, and that he then detained and questioned him on the basis that a sugar cookie wrapped in plastic wrap was actually an illegal drug.

       when pulling from the curb and failure to wear safety restraints, both minor traffic offenses. (Doc. 1 at ¶ 15).

10. Officer Murphy and his partner Officer Wheeler heard Sgt. Caton come on the radio with a stop on McMicken. (Doc. 25 at 25-26).

11. Officer Murphy and Officer Wheeler drove to where Sgt. Caton was in case he needed any assistance. (*Id.* at 26).

12. Officer Murphy arrived sometime after the traffic stop and search were initiated, but before Mr. Thompson was charged with the traffic offenses. (Doc. 1 at ¶ 15).

13. Despite the fact that Officer Murphy did not initiate the traffic stop and did not observe Mr. Thompson pulling away from the curb or operating the vehicle without a safety restraint, Sgt. Caton instructed Officer Murphy to sign the traffic ticket. (*Id.*)

14. Sgt. Caton described the traffic offenses he observed to Officer Murphy and Officer Murphy filled out the citation.[5] (Doc. 25 at 48-50).

15. When Officer Murphy signed the ticket, he attested that "under the penalties of perjury and falsification that the above complaint was reviewed and is true." (Doc. 1 at ¶ 17).

16. He made this representation even though he did not witness the alleged traffic offenses. (*Id.*)

17. The Cincinnati Police Department procedure manual does not require officers to sign traffic tickets only if they personally observe the violations. *See* Cincinnati Police Department Procedure 12.240 Ohio Multi-Count Uniform Traffic Ticket (MUTT), eff. 7/27/09. (Doc. 26, Ex. A).

18. The traffic charges against Mr. Thompson were ultimately dismissed for want of prosecution, but only after Mr. Thompson made numerous court appearances in the Hamilton County Municipal Court. (Doc. 1 at ¶ 18).

---

[5] In making this admission, Plaintiff does not admit that he committed traffic offenses, but does admit that Sgt. Caton described the alleged traffic infractions to Officer Murphy and that Officer Murphy subsequently cited him for these alleged infractions.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

Plaintiff alleges that the City is liable under Section 1983 because its failure to train, supervise, monitor, and discipline Sgt. Caton caused his constitutional injuries.

To succeed on a claim for relief under Section 1983 against a municipality, a plaintiff must prove that his "constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010).

> Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing. *Id.* A local government entity violates Section 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.* A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. *Id.*

*Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006).

### A. Failure to Train

The systematic failure to train or supervise police officers adequately can amount to a custom or policy justifying city liability "when the failure . . . amounts to 'deliberate indifference' on behalf of the city toward its inhabitants." *Gregory*, 444 F.3d at 753.[6]

> To establish deliberate indifference, a plaintiff must demonstrate either that a municipality or local government (1) failed to provide adequate training [or supervision] in light of foreseeable consequences that could result from the lack of instruction [or supervision]; or (2) failed to act in response to repeated complaints of constitutional violations by its officers.

*Rodriguez v. City of Cleveland*, 619 F. Supp. 2d 461, 482 (N.D. Ohio 2009). There are at least two situations in which inadequate training could be found to be the result of deliberate indifference. "One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction," as would be the

---

[6] "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

case, for example, if a municipality failed to instruct its officers in the use of deadly force. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). "A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.*

Plaintiff alleges that the city failed to provide Sgt. Caton with sufficient training on search and seizure, race relations, and engagement with the public. Specifically, Sgt. Caton was known to have used offensive racial epithets and profanity while in uniform as well as to have committed excessive force. Despite these examples of "repeated constitutional violations," the City failed to train Sgt. Caton as to proper search and seizure techniques, the law surrounding Fourth Amendment search and seizure issues, and proper race relations between police and the community. *Cherrington v. Skeeter*, 344 F.3d 631, 647 (6th Cir. 2003).[7] Since being promoted to the rank of sergeant and assigned to patrol high-crime areas, Sgt. Caton has not had any training on the constitutional requirements for police searches and seizures.[8] (Doc. 24 at 44, 54-56). Furthermore, Sgt. Caton has not received training on appropriate race relations since he graduated from the police academy in 1996. (*Id.* at 17, 40, 157-58). Sgt. Caton's training

---

[7] A failure to train police officers regarding warrant-less searches and subsequent arrests could lead "a trier of fact [to] conclude that the [d]efendant [c]ity's training . . . was 'inadequate to the tasks that officers must perform,' and that this inadequacy reflected the [c]ity's 'deliberate indifference' to the Fourth Amendment rights of those who come in contact with the [city's] police." *Id.*

[8] Notably, Plaintiff was trained to use explicit, profane language to disarm tense situations. (Doc. 24 at 69-71).

has focused generally on the paperwork and administrative aspects of being a supervisor. (*Id.* at 40-41).[9]

### B. Failure to Supervise, Monitor, and Discipline

The Sixth Circuit has held that failure to investigate complaints or discipline officers can give rise to Section 1983 liability. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). The theory underlying these cases is that the municipality's failure to investigate or discipline amounts to a "ratification" of the officer's conduct. *Dyer v. Casey*, No. 94-5780, 1995 U.S. App. LEXIS 37042, at *2 (6th Cir. Dec. 4, 1995).

Plaintiff argues that assigning Sgt. Caton to patrol Over-the-Rhine amounts to deliberate indifference of the constitutional rights of African-American citizens based on his propensity for racially-motivated behavior and the fact that the City had available alternatives.

The record indicates that Sgt. Caton has a history of disciplinary action. Most notably, Sgt. Caton was found to be at fault in the homicide of an unarmed African-American suspect.[10] (*Id.* at Ex. 15). The City also knew that Sgt. Caton had use the "n" word while on duty to describe an innocent person walking down the street. (*Id.* at 158).

---

[9] Sgt. Caton was promoted to the rank of sergeant even though he scored 35 out of 200 on the promotional exam. (*Id.* at 27-29).

[10] An internal police investigation found Sgt. Caton at fault for Roger Owensby's death after he was severely beaten, handcuffed, and thrown face-down in the back of police cruiser. (Doc. 24, Ex. 15). However, a court ultimately reversed these findings when Sgt. Caton administratively appealed his termination from the force. (*Id.* at 151). Sgt. Caton admitted to calling Owensby a "mother fucker." (Doc. 24 at 156, 159).

Sgt. Caton was also disciplined for failing to activate the video recorder in his cruiser. (*Id.* at 148). Despite this disciplinary history, Sgt. Caton was placed in charge of use of force investigations, and assigned to a district containing racially diverse areas known for street-level drug and prostitution crimes. (Doc. 24 at 19, 22-23, 41-42).

Accordingly, this Court concludes that there are genuine issues of material fact in dispute regarding the claim for failure to train, supervise, monitor, and discipline. Specifically, Plaintiff has presented facts upon which a reasonable jury could conclude that the city acted with deliberate indifference. As a result, Defendants are not entitled to summary judgment.

## V. CONCLUSION

Therefore, for the reasons stated herein, Defendants' motion for summary judgment (Doc. 26) is **DENIED**.

**IT IS SO ORDERED.**

Date: May 1, 2012
　　　　　　　　　　　　　　　　　　　　　*s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge